IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DAVID BYCHKOV,                          )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        Civil Action No. 1:25-cv-802 (RDA/IDD)
                                        )
NTT DATA FEDERAL SERVICES, INC.,        )
                                        )
        Defendant.                      )
_____ )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant NTT Data Federal Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 11) ("Motion"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with the Memorandum of Law in Support (Dkt. 12), Plaintiff's Opposition (Dkt. 14), and Defendant's Reply (Dkt. 16), this Court GRANTS the Motion for the reasons that follow.

## I. FACTUAL BACKGROUND[1]

Plaintiff is a Jewish identifying male who suffers from migraine disorders. Dkt. 11 ¶¶ 6(a), 14. In January 2024, Defendant hired Plaintiff as a Contract Instructional Systems Specialist ("CISS") for the FBI Academy's Basic Field Training Course ("BFTC"), under a federal contract with the U.S. Department of Justice. *Id.* ¶ 5. Plaintiff disclosed in his employment onboarding that he: (i) suffers from migraine disorder; (ii) was prescribed medication for that disorder; (iii) had previously made protected whistleblower complaints to the Department of Defense-Inspector General

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

and Office of Special Counsel about TRICARE fraud while serving as a Visiting Professor at the Department of Defense's Defense Acquisition University; and (iv) identifies as Jewish. *Id.* ¶¶ 6(a)-(c), 14.

In mid-February 2024, during a team meeting, Plaintiff felt uncomfortable when he perceived a coworker as smirking after Plaintiff congratulated a co-worker on wedding plans by loudly saying "Mazel Tov!" *Id.* ¶ 17. Plaintiff alleges that, on February 21, 2024, personnel of the FBI Residential Instructional Design Unit ("RIDU") falsely accused him of cannabis use at his desk, and that he was subsequently questioned by the FBI. *Id.* ¶ 9. During that questioning (by Tom Taylor[2]), Plaintiff stated that he feared retaliation due to his father's open support of Israel after the October 7th events. *Id.* ¶ 16. Plaintiff was then cleared, but Defendant did not correct Plaintiff's security clearance, after it had been downgraded to "loss of jurisdiction" with an "incident" file resulting from the false allegation. *Id.* ¶¶ 9, 10.

On April 17, 2024, Plaintiff asserts that he submitted a spreadsheet[3] demonstrating specific failures that Defendant's training caused that resulted in over $100 million in Federal Torts Claims Act exposure, Occupational Safety and Health Administration violations, and academic fraud via a secure, high-side email. *Id.* ¶¶ 11, 29. The following day, Plaintiff informed Taylor via text that he received lidocaine injections, was using earplugs for sound sensitivity, and needed lighting accommodations for his migraines. *Id.* ¶ 13. UC Romano acknowledged this and offered to move his desk. *Id.* ¶ 13.[4]

---

[2] It is unclear whether Tom Taylor is an employee of Defendant or an employee of the FBI. This lack of clarity in Plaintiff's allegations contributes to the failure to plausibly allege his claims.

[3] It is unclear who this spreadsheet was submitted to, again leading to failures in Plaintiff's Amended Complaint.

[4] Defendant states they are unaware of who "UC Romano" is or what title, position, or rank UC Romano would have held in respect to Plaintiff.

On April 22, 2024, the day of his scheduled migraine injections and the first day of Passover, Plaintiff asserts that Defendant's Human Resources Manager terminated Plaintiff because of the "way" he disclosed the fraud, despite his satisfactory employment performance. *Id.* ¶¶ 18, 30. Plaintiff alleges that other, similarly situated employees, who raised complaints about the quality and accuracy of training materials were never disciplined, faced no retaliation, and remained in good standing. *Id.* ¶¶ 21-24. Plaintiff asserts that these similarly situated employees were three women, Alice Clark Hayes, Sara Clarke, Jennifer Imholte, as well as a male of Greek descent, Joey Tzoumis, who Plaintiff alleges was often described by unidentified employees of Defendant as emotional. *Id.* ¶¶ 21, 22, 23, 25. Plaintiff asserts that, following his termination, he has been unable to secure federal contract employment, and that he remains restricted by the non-solicitation clause in the employment agreement barring him from teaching, contracting, or seeking alternative employment at the FBI Academy. *Id.* ¶¶ 19, 32, 33.

Plaintiff filed his Equal Employment Opportunity Commission ("EEOC") charge on January 27, 2025. Dkt. 11 at 2.

## II. PROCEDURAL BACKGROUND

Plaintiff filed the original Complaint against Defendant on May 8, 2025. Dkts. 1, 3. On August 27, 2025, Defendant filed a Motion to Dismiss. Dkts. 6, 7. Plaintiff then filed an Amended Complaint on September 18, 2025. Dkt. 10. Defendant filed the pending Motion to Dismiss Plaintiff's Amended Complaint on October 2, 2025, the Opposition was filed on October 16, 2025, and the Reply was filed on October 22, 2025. Dkts. 11, 12, 14, 16.

## III. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## IV. ANALYSIS

Plaintiff asserts six[5] causes of action in his Amended Complaint: (i) disparate treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"); (ii) physical disability discrimination under the Americans with Disability Act (the "ADA"); (iii) disparate treatment under the ADA; (iv) statutory retaliatory action under the Virginia Whistleblower Protection Act ("VWPA"); (v) a common-law *Bowman* claim; and (vi) seeking a declaratory judgment under Virginia non-compete law. Dkt. 10. Defendant moves to dismiss on three bases: (i) untimeliness, (ii) that certain claims

---

[5] Plaintiff purports to assert Counts I through VII but has omitted Count III. Dkt. 10. Thus, although there appear to be seven causes of action, there are only six.

are time-barred, and (iii) failure to state a claim. Dkt. 12. The Court addresses each argument in turn.

## A. Untimeliness

The Amended Complaint filed by Plaintiff, represented by counsel, against NTT Federal Data Services, Inc.[6] was untimely. Pursuant to Federal Rules of Civil Procedure 15(a), a party may amend its pleading once as a matter of course no later than twenty-one days after serving it, twenty-one days after a responsive pleading, or twenty-one days after service of a motion under Rule 12(b), whichever is earlier. Defendant filed its Motion to Dismiss on August 27, 2025. Dkts. 6, 7. Plaintiff filed the Amended Complaint on September 18, 2025, which is 22 days after service of the Motion to Dismiss. Dkt. 10. Federal Rules of Civil Procedure 15(a)(2) allows for a party to amend its pleading with the opposing party's written consent or the court's leave. However, neither were sought or provided.

Nonetheless, the Court has discretion to accept an untimely amended complaint where the delay is because of excusable neglect. *See* Fed. R. Civ. P 6(b)(1)(B). Plaintiff argues that the untimeliness is the result of a calendaring issue. Courts uniformly recognize, however that "ignorance of when a time period expires does not qualify as excusable neglect, nor a busy schedule, lack of diligence, inadvertence, or other manifestations of carelessness and laxity." *Key v. Robertson*, 626 F. Supp. 2d 566, 577 (E.D. Va. 2009) (quoting *Eagle Fire, Inc. v. Eagle Integrated Controls, Inc.*, 2006 WL 1720681, at *4 (E.D. Va. June 20, 2006)). This alone is a basis to dismiss the Amended Complaint. Nonetheless, the Court addresses each of Defendant's arguments.

---

[6] "[Defendant] confirms the legal name of the entity that formerly employed Plaintiff is NTT DATA Services Government, LLC, not NTT DATA Federal Services, LLC." Dkt. 12 at 1 n.1. Thus, neither the Complaint nor the Amended Complaint name the correct Defendant. Defendant has nonetheless appeared and defended this action.

B. Time-Barred

Defendant next argues that certain of Plaintiff's claims are time-barred. Under Title VII and the ADA, a Plaintiff must file a timely charge of discrimination or retaliation with the EEOC as a prerequisite to filing in federal court, which must be made within 300 days after the alleged unlawful conduct. *See* 42 U.S.C. § 2000e-5e; *Carter v. Bear Island Paper Co.*, 2004 WL 3338326, at *3 (E.D. Va. May 25, 2004). Plaintiff filed his EEOC charge on January 27, 2025. Dkt. 11 at 2. Thus, any allegations of discrimination must stem from events occurring after April 2, 2024, 300 days before finalizing his EEOC claims. *See Carter*, 2004 WL 3338326, at *3.

Plaintiff's allegations reach back to February 21, 2024. *See, e.g.*, Dkt. 10 ¶¶ 9, 17. Plaintiff argues that the claims from February 21, 2024, are sufficiently related to those occurring after April 2, 2024, and help provide background for the later claims. Dkt. 14 at 6. But the Amended Complaint clearly intends to rely on those incidents to form the basis for his claim. In particular, the incident relating to the loss of his security clearance and his proffer of "Mazel Tov" to a colleague are both incidents from February 2024 upon which Plaintiff relies for his disparate treatment claim. *See, e.g.*, Dkt. 10 ¶ 44. Moreover, the continuing violation doctrine (which allows a claim alleging a broader pattern of discrimination) applies only to hostile work environment claims, which Plaintiff does not assert. *See Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 222-23 & n.5 (4th Cir. 2016); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (holding that when challenging a seniority system, after being forced to resign due to marriage, time-barred actions showing background evidence were impermissible because she was challenging her own employment termination rather than the seniority system at United). Like *Evans*, Plaintiff is seeking to challenge his own employment termination rather than broader company procedure, so "background evidence" is barred. *See* 431 U.S. at 558. Furthermore, the Supreme Court has held that time-barred discrete discriminatory charges cannot be prolonged even if related to acts alleged in timely-filed charges or continued participation in

6

employment. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980) (holding that "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination"). Here, the February 2024 allegations related to the false accusation and religious incident are time-barred, and Plaintiff cannot prolong their lifespan by bootstrapping them to his continued employment. Thus, the discrete acts alleged before April 2, 2024, are time-barred and those allegations are dismissed.

### C. Failure to State a Claim

Defendant asserts that each of Plaintiff's six causes of action fail to state a claim. The Court addresses whether Plaintiff has asserted a plausible cause of action with respect to each count.

### i. Title VII Discrimination

Title VII prohibits intentional acts of employment discrimination based on race, color, religion, sex, and national origin in any aspect of employment. *See* 42 U.S.C. § 2000e *et seq.* To state a *prima facie* claim of disparate treatment discrimination under Title VII, Plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). But Plaintiff is not required to establish a *prima facie* case to state a claim and may instead establish a reasonable inference of discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002) (noting that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement"); *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (discussing whether allegations are sufficient to support a reasonable inference of discrimination sufficient to support a motion to dismiss). Ultimately, to survive a motion to dismiss, Plaintiff must allege facts sufficient to establish a reasonable inference of discrimination. *See Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020). Plaintiff fails to meet this standard.

7

Plaintiff has alleged that he was a member of a protected class and that he was terminated. Defendant first challenges whether Plaintiff has alleged satisfactory job performance. Plaintiff asserts that he has done so, based on his "identification of serious instructional and public safety failures in . . . the training content" Dkt. 14 at 7. Whether there is satisfactory job performance requires an inquiry from the employer's perspective. *See Kikwebati v. Strayer Univ. Corp.*, 2014 WL 7692396, at *8 (E.D. Va. Oct. 21, 2014) (finding mere conclusions of satisfactory performance is insufficient to survive a motion to dismiss); *Robinson v. Loudoun Cnty. Pub. Schs.*, 2017 WL 3599639, at *4-5 (E.D. Va. Aug. 18, 2017); *Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F. Supp, 2d 717, 727 (E.D. Va. Nov. 1, 2013) (collecting cases). For example, a plaintiff may proceed by "referenc[ing] positive feedback or performance reviews that he received from his . . . supervisor since [the plaintiff] last suggested that he had performed satisfactorily." *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015). Here, the Amended Complaint is merely conclusory with no further factual allegations. Dkt. 10 ¶ 41. Moreover, Plaintiff does not allege that identifying fraud was an essential job function of his job. Accordingly, Plaintiff fails to plausibly allege this element.

Next, Defendant challenges whether Plaintiff has plausibly alleged that he was treated differently than a similarly situated comparator. Plaintiff does not have to proceed in this manner to demonstrate a reasonable inference of discrimination but has affirmatively elected to do so. Dkt. 10 ¶ 39. And, in so doing, Plaintiff has failed to plausibly allege any *facts* supporting such assertion. The Fourth Circuit has held that "the plaintiff must show they and the comparator 'dealt with the same conduct without differing or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (quoting *Hayward v. Locke*, 378 F. App'x 355, 359 (4th Cir. 2010)). Plaintiff has

8

identified two protected characteristics (sex and religion)[7] and must identify similarly situated comparators treated differently with respect to each characteristic. Plaintiff identifies Alice Clark Hayes, Sarah Clarke, and Jennifer Imholte as potential comparators with respect to sex. Plaintiff has failed to plausibly allege that any of these women were similarly situated comparators: (i) Hayes was in a supervisory position, Dkt. 10 ¶ 14; (ii) there is no information regarding Clarke's position at all, *id.* ¶ 22; and (iii) there is no information about Imholte's position at all, *id.* ¶ 23. *See Newcomer v. MOM's Organic Mkt., Inc.*, 2026 WL 302537, at *3 (D. Md. Feb. 5, 2026) (dismissing claim where Plaintiff failed to allege facts supporting that alleged comparators were similar in all material respects). Plaintiff also identifies Joey Tzoumis, who is a man of Greek descent, as another man who was treated poorly. Dkt. 10 ¶ 25. But again, Plaintiff fails to provide any information about Tzoumis's position, supervisors, or complaints to support an inference that any poor treatment of him was because he is a man. Plaintiff also does not identify the religions of any of the identified comparators (Tzoumis, Clarke, Hayes, and Imholte). Accordingly, Plaintiff has failed to plausibly allege the existence of similarly situated comparators who were treated differently.

In short, Plaintiff has failed to allege facts supporting either satisfactory job performance or a similarly situated comparator treated differently. Moreover, there are no other facts alleged that support a plausible inference of sex or religious discrimination[8] in relation to Plaintiff's termination. Accordingly, Count I will be dismissed.

---

[7] Plaintiff attempts to assert a third protected characteristic: "prior EEO activity." Dkt. 10 ¶ 40. But Plaintiff does not assert that he engaged in any activity protected under Title VII. Indeed, Plaintiff's references to protected activities relate only to his alleged whistleblower activities. However, "retaliation claims under the various anti-discrimination statutes 'do not cross-pollinate,' meaning that a retaliation claim brought pursuant to a specific anti-discrimination statute must be based on a protected activity under that statute." *Blanchard v. Arlington Cnty.*, 2023 WL 2215807, at *9 (E.D. Va. Feb. 24, 2023). Accordingly, Plaintiff cannot pursue under Title VII any claims based on those activities.

[8] To the extent that Plaintiff relies on the fact that he was terminated on Passover, Plaintiff has also not plausibly alleged that he was discriminated against. *See Lawrence v. Mars, Inc.*, 955 F.2d

### ii. ADA Claim

To state a *prima facie* claim for disability discrimination under the ADA, a plaintiff must show: (1) he has a disability; (2) that he is a "qualified individual" for the employment in question; and (3) that his employer took adverse employment actions because of his disability. *See Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212 (4th Cir. 1994).[9] Again, pursuant to *Swierkiewicz*, Plaintiff need ultimately only allege facts plausibly supporting a reasonable inference of discrimination. *See* 534 U.S. at 510-15. Counts II and IV both assert claims of disability discrimination. Here, Plaintiff fails to plausibly allege facts supporting an inference of disability discrimination.

Plaintiff rests his disability discrimination claim on three basic allegations: (i) he informed his employer about his condition in his interview, Dkt. 10 ¶ 6(a); (ii) he informed Taylor that he received lidocaine injections, *id.* ¶ 13; and (iii) he was terminated on the same day as a medical appointment, *id.* ¶ 18. But Plaintiff fails to allege that any decisionmaker knew of his medical appointment or knew that his medical appointment was in connection with his alleged disability. Moreover, Plaintiff fails to identify any caselaw[10] suggesting that terminating a plaintiff on the same day as a medical

_____

902, 906 (4th Cir. 1992) ("These facts are insufficient for the trier of fact to have reasonably inferred that Lawrence's discharge was the result of religious discrimination."). Importantly, Plaintiff fails to allege that any decisionmaker *knew* that Plaintiff was being terminated on Passover and, in the absence of any other allegations of religious discrimination, the date of Plaintiff's termination alone is insufficient to establish a plausible inference of discrimination.

[9] The parties are not in dispute whether Mr. Bychkov's migraine condition qualifies as a disability under the ADA, but the Court notes that there is case law suggesting that it does not. *See, e.g., Johnson v. N. Carolina Dep't of Health & Hum. Servs.*, 454 F. Supp. 2d 467, 474 (M.D.N.C. 2006) (finding plaintiff was not disabled within the meaning of the ADA based on her migraine condition). Given Defendant's position, the Court does not address this issue now.

[10] Plaintiff cites *Williams v. Hansen*, 326 F.3d 569,584 (4th Cir. 2003). However, Plaintiff has cited a dissent and a case applying sovereign immunity to an officer's "motion for summary judgment on the basis of qualified immunity on plaintiffs' equal protection claims." *Id.* at 581. This case is unpersuasive to the Court in disregarding a causation element within a disability discrimination claim under the ADA. Dkt. 14 at 9. In addition, the majority opinion in *Hansen* specifically requires

appointment *alone* suffices to establish disability discrimination. Judges have rejected similar claims. *See Thomas v. UCI Med. Affiliates, Inc.*, 2011 WL 4625393, at *3 (D.S.C. Aug. 31, 2011), *report and recommendation adopted*, 2011 WL 4625384 (D.S.C. Oct. 4, 2011) ("Nor does she allege that she was discharged because of any disability. Rather, her allegations are that she was terminated after taking an entire day's leave to attend a medical appointment."). There are no allegations evincing animus towards Plaintiff based on his alleged disability, commentary regarding Plaintiff's medical appointments, or any information suggesting that Plaintiff's termination was in any way connected to his alleged disability. Accordingly, Counts II and IV will also be dismissed.[11]

iii. Virginia Whistleblower Protection Act[12]

Virginia Code § 40.1-27.3(A)(1) "prohibits an employer for discharging an employee because he: 'in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official.'" Dkt. 10 ¶ 59; Va. Code § 40.1-27.3. To succeed on his whistleblower retaliation claim, Plaintiff "must plausibly allege [he] complained about conduct that violates a 'federal or state law or regulation' rather than the employer's own policies or general best practices." *Mirshahi v. Patient First Richmond Medical Group LLC*, 2026 WL 1480914, at *2 (4th Cir. May 27, 2026). Plaintiff has plausibly alleged facts that satisfy this standard, because he asserts that he complained about practices by Defendant that would violate the FTCA and OSHA. *See* Dkt. 10 ¶¶ 7, 11, 18. Further, Plaintiff alleges that HR Manager Julie Ruth informed Plaintiff that

---

unequal treatment claims to allege intentional or purposeful discrimination, such that defendants have knowledge of their discriminatory purpose. *See* 326 F.3d at 576. In fact, Defendant terminated Plaintiff because of the way he disclosed fraud, not because of his disability.

[11] Again, there is no Count III.

[12] Plaintiff failed to address Count V in his Opposition. Despite Plaintiff's general lack of responsiveness, the Court considers Defendant's arguments on their merits. *See Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 222 (4th Cir. 2026) (reversing district court because "Rule 12(b)(6) simply does not provide for any such default relief"). Thus, the Court will not grant the Motion based on Plaintiff's failure to address Count V. Dkt. 16 at 3-4.

11

he was being terminated because of the "way he had disclosed the fraud." Dkt. 10 ¶ 18. Thus, Plaintiff has alleged that his discharge was specifically linked to his good faith exposure to a violation of fraud.

Nonetheless, Count V is dismissed as time-barred. Virginia Code § 40.1-27.3(c) requires a violation of this section to be brought "within one year of the employer's prohibited retaliatory action." A district judge in this District has recognized that the plain text of Virginia Code § 40.1-27.3(A) states that the one-year statute of limitations period is understood with reference to the "retaliatory action," not later consequences of that action. *See Kulshrestha v. Shady Grove Reproductive Science Center, P.C.*, 668 F. Supp. 3d 411, 415-16 (E.D. Va. 2023) (finding that the statute of limitations began to run when Plaintiff received her Notice of Termination). Here, Plaintiff was terminated on April 22, 2024, and filed his first Complaint on May 8, 2025. Dkt. 10 ¶ 18; Dkt. 1. Thus, Count V is barred under the statute of limitations and will be dismissed.

### iv. The *Bowman* Claim [13]

In *Bowman*,[14] the Supreme Court of Virginia recognized a "limited exception to the employment-at-will rule," and held that plaintiffs could vindicate a wrongful discharge if it constituted a violation of public policy enshrined in statute. *Doss v. Jamco, Inc.*, 254 Va. 362, 366 (1997) (explaining *Bowman*). On the other hand, "[t]he Supreme Court of Virginia has long held that 'where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise.'" *Williams v. TMS Int'l LLC*, 2021 WL 4071868, at *5 (E.D. Va. Sept. 9, 2021) (quoting *Sch. Bd. v. Giannoutsos*, 380 S.E.2d 647, 649 (Va.

---

[13] Again, Plaintiff failed to address the merits of Defendant's arguments with respect to Count VI. Again, pursuant to *Guzman*, the Court addresses the substance of Defendant's arguments and does not decide the Motion with respect to this Count based on Plaintiff's failure to respond.

[14] A "*Bowman* Claim" is premised on the Supreme Court of Virginia's decision in *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

12

1989)).  Accordingly, "[n]umerous Virginia courts have found that 'statutes containing their own remedy cannot also support a *Bowman* claim.'"  *Vinson v. City of Richmond*, 2023 WL 4850172, at *9 (E.D. Va. July 28, 2023) (citations and internal quotation marks omitted) (discussing interaction of *Bowman* and the Virginia Human Rights Act); *see also Carmack v. Virginia*, 2019 WL 1510333, at *13 (W.D. Va. Apr. 5, 2019) ("If the termination is in violation of stated public policy, the law does not permit the aggrieved employee to pursue a common law remedy when a statutory remedy is clearly enunciated." (citations and internal quotation marks omitted)) (collecting cases); *Williams*, 2021 WL 4071868, at *5 (same).

Here, Plaintiff asserts that his *Bowman* claim is based on the public policy embodied in the Virginia Whistleblower Protection Act ("VWPA").  Dkt. 10 ¶¶ 62-63.  But the VWPA creates a private right of action, providing that "[a] person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction[.]"  Va. Code § 40.1-27.3(C).  The VWPA further provides that "[t]he court may order as a remedy" (i) an injunction, (ii) reinstatement, and (iii) compensation.  *Id.*  Courts have held that "because the VWPA creates a cause of action and provides its own remedy, it cannot support a common law *Bowman* claim."  *Mirshahi*, 2024 WL 3823991, at *8.  Accordingly, to the extent Plaintiff's *Bowman* claim is premised on the VWPA, it must be dismissed.

Additionally, Plaintiff asserts that his *Bowman* claim is based on the public policy embodied in Virginia Code § 2.2-3011.  Dkt. 10 ¶ 62-63.  This section provides: ". . . any whistle blower may bring a civil action for violation of this section in the circuit court of the jurisdiction whether the whistle blower is employed."  Va. Code § 2.2-3011(D).  But Virginia Code § 2.2-3011 also creates its own cause of action and provides its own remedy, making the statute incompatible with a common law *Bowman* claim.  Accordingly, the *Bowman* claim will also be dismissed to the extent it is premised on this statute.

v. The Declaratory Judgment Act

The Declaratory Judgment Act gives federal district courts discretion to declare the rights or legal relations of any interested party seeking such declaration, regardless of whether further relief is or could be sought. *See* 28 U.S.C. § 2201; *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). Although district courts are given wide latitude to exercise jurisdiction over declaratory judgments, the Fourth Circuit has provided that a district court should normally only entertain a declaratory judgment action where the declaratory relief sought will: (1) serve a useful purpose in clarifying and settling the legal relations in issue and (2) terminate and afford relief for the uncertainty, insecurity, and controversy giving rise to the proceeding. *See Ind-Com Elec. Co.*, 139 F.3d at 422-23 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). In requiring a "case of actual controversy," the Act mirrors the jurisdictional statement in Article III of the United States Constitution granting the federal courts jurisdiction over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937) ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense.").

Plaintiff seeks a declaratory judgment regarding the scope of his non-compete clause. Plaintiff does not allege that Defendant has sought to enforce the non-compete, that Defendant has threatened any litigation relating to the non-compete, or that there is any actual controversy regarding the non-compete. Rather, Plaintiff has merely alleged the existence of a non-compete, the form and text of which is not identified. Plaintiff is not positioned differently from any other person who has entered into a contract and has not established the existence of a controversy sufficient to establish a controversy under the Act. *See Volvo Grp. N. Am., LLC v. Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am.*, 451 F. Supp. 3d 570, 575–76 (W.D. Va. 2020) ("Volvo presents

14

the manufactured dilemma of either continuing the payments it agreed to make under the CBA until 2021 or stopping payments and facing liability for breaching its agreement. The same could be said for any party to a contract."). Accordingly, Count VII will be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court will dismiss the entirety of the Amended Complaint. Thus, the Court must assess whether to permit further amendment. Here, Plaintiff is represented by counsel, has had the benefit of Defendant's prior Motion to Dismiss before filing the Amended Complaint, and several claims are procedurally barred. Permitting further amendment would be futile, as no additional allegations could cure several of the deficiencies contained within the Amended Complaint. Moreover, the procedural defects cannot be cured by additional allegations.

Accordingly for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 11) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Amended Complaint (Dkt. 10) is DISMISSED. Counts I, II, IV, V, and VI are dismissed with prejudice whereas Count VII is dismissed without prejudice but without leave to amend; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
July _15_, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

15